STATE OF WEST VIRGINIA

*v.*

ROBERT W. CRITZER

(No. 14674)

Decided July 17, 1981.

*Marvin L. Downing* and *Jerry D. Moore* for Critzer.

*Chauncey H. Browning,* Attorney General, *Charles G. Brown,* Deputy Attorney General, for State.

PER CURIAM:

Robert Wilson Critzer appeals from an April 16, 1979 final order of the Circuit Court of Pendleton County, overruling his post-trial motions and sentencing him to confinement in the penitentiary upon a jury verdict finding him guilty of obtaining money by false pretenses in violation of *W.Va. Code,* 61-3-24.

Critzer contends the trial court erred in: (1) admitting an in-court identification of the defendant in view of the unduly suggestive pretrial identification procedures employed by law enforcement authorities; (2) refusing to grant his motion for a mistrial predicated on the inflammatory and prejudicial statements by the prosecuting attorney to the jury during closing argument; and, (3) overruling his motion for a judgment of acquittal based on the insufficiency of the evidence. We reverse the conviction

and grant a new trial because of prosecutorial misconduct in closing argument. We affirm the trial court's rulings on the identification issue and do not address the question of the sufficiency of the evidence.

On the afternoon of January 12, 1979, Masel Byrd, the victim of the false pretense, received a telephone call at his residence from an individual who identified himself as Mr. Wilson, a private investigator employed by the Pendleton County Bank. Mr. Byrd was advised that money was being embezzled from his savings account by an employee of the bank, and it was requested that he assist the bank in apprehending the embezzler by immediately withdrawing $2,400.00 in particular denominations, which was to be promptly picked up at Mr. Byrd's residence by one of the bank's investigators who had been called in from out of state to assist in the investigation. Mr. Byrd agreed to cooperate, immediately went to the bank, withdrew the money as requested, and returned home. A short time later, Mr. Byrd received a second telephone call from the man identifying himself as Mr. Wilson and shortly thereafter a man posing as a bank investigator came to the Byrd home, obtained the $2,400.00 from Mr. Byrd and left.

On the afternoon in question Jed Sponaugle, an eighteen-year-old Pendleton County youth, was working in his father's store. Sponaugle testified that a light blue, late model Cadillac pulled into the church lot, turned around, and drove off. Immediately thereafter he saw a man walking up the street in the direction of the Byrd residence. Because it was very unusual to see a new Cadillac in this rural community, Sponaugle testified that he was led to pay particular attention to its movements. The Cadillac, with Virginia license plates, passed by the store at least a half dozen times, twice parking in the church lot next to the store. The second time the Cadillac stopped in the church parking lot Sponaugle spotted a man getting into the car. A short time later Sponaugle saw the car for the last time, heading east with three occupants.

Fifteen days later on January 17, 1979, Sponaugle was shown photographs of several persons. He selected the photograph of the defendant as possibly being the driver of

the Cadillac but was unable to make a positive identification. He also identified the man he saw entering the car in the church parking lot as one Albert Kanney, who was a resident of Virginia.

Eleven days later on February 6, 1979, Sponaugle was brought to a Pendleton County Magistrate's Office to determine if he could identify Critzer as the driver. The defendant was handcuffed and was accompanied by three or four police officers at this "showup." Sponaugle positively identified Critzer as the driver. He testified that his identification was independent of the photographs and the prior confrontation. The defendant's motion to suppress was overruled, and Sponaugle made an in-court identification of the defendant.

Critzer's defense at trial was alibi. He was a resident of Winchester, Virginia when the crime was committed. He and his wife, and two other witnesses, a Mr. and Mrs. Finch, testified that he was in West Agusta, Virginia, assisting the Finch family in moving their residence on the day the crime was committed. On cross-examination the defendant admitted being an acquaintance of Albert Kanney, the man who was identified by Mr. Byrd as being the individual who received the $2,400.00, and who was also identified by Sponaugle as being the individual who was picked up in the church parking lot. He also admitted knowing of an individual who owned a late model Cadillac. The prosecution's theory of the case was that Critzer was the man who drove the car and telephoned Mr. Byrd identifying himself as an investigator by the name of Mr. Wilson. The prosecution argued that the defendant selected the surname Wilson because that was his middle name which he could easily remember.

We first consider the issue that requires us to reverse and remand for a new trial: the remarks of the prosecuting attorney during closing argument. Critzer contends that the prosecutor's remarks were not kept within the evidence and were made to inflame the jury and to induce a guilty verdict warped by prejudice. For its part, the State relies on the long and well-established rule that prosecutors are entitled to great latitude in closing arguments and it is only

where improper remarks are clearly prejudicial or result in manifest injustice that reversal is proper. Syl. pt. 2, *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979), *quoting in part*, Syl. pt. 1, *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978); *See also*, Syl. pt. 8, *State v. Reppert*, 132 W.Va. 675, 52 S.E.2d 820 (1949), *quoting*, Syl. pt. 6, *State v. Allen*, 45 W.Va. 65, 30 S.E. 209 (1898); Syl. pt. 7, *State v. Lewis*, 133 W.Va. 584, 57 S.E.2d 513 (1949).

In *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), we discussed the role of a prosecuting attorney in a criminal case and emphasized that:

> "The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law." Syl. pt. 3, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

A prosecuting attorney has a duty not to make statements concerning facts not in evidence or not inferrable from the evidence. As early as 1931, in *State v. Moose*, 110 W.Va. 476, 158 S.E. 715 (1931), this Court reversed a robbery conviction because the prosecutor's closing argument was not based on the evidence. The Court found the prosecuting attorney engaged in "palpable misconduct" rather than mere intemperance of speech. *Id.* at 477, 158 S.E. at 716. In the sole Syllabus, we held:

> "An attorney for the state may prosecute vigorously as long as he deals fairly with the accused; but he should not become a partisan, intent only on conviction. And, it is a flagrant abuse of his position to refer, in his argument to the jury, to material facts outside the record, or not fairly deducible therefrom."

Similarly, in *State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955), this Court recognized its duty to caution prosecut-

ing attorneys of this State against the use of their positions in the trial of criminal cases, where the prosecutor in argument to the jury had given his opinion as to how the killing occurred without evidence of record on the issue justifying the remarks. The Court concluded the prosecutor's actions, even if no other error had occurred in the case, would have constituted reversible error. *See also*, Syl. pt. 2, *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978); T.C.R. VI (1963).

Closely related to the rule forbidding argument not based upon the evidence is the strict prohibition against a prosecuting attorney interjecting his personal opinion in the trial of a case. At the very least since this Court adopted the American Bar Association's Code of Professional Responsibility,* effective July 1, 1970, it has been improper for a prosecutor in this State to assert his personal opinion as to the justness of a cause, as to the credibility of a witness, or as to the guilt or innocence of an accused. This rule does not, however, prevent a prosecutor from arguing any position based on his analysis of the evidence. In Syllabus Point 3 of *State v. Brown*, 104 W.Va. 93, 138 S.E. 664 (1927), we held that counsel for the State ordinarily should not characterize an accused as a criminal. In Syllabus Point 3 of *State v. Vineyard*, 108 W.Va. 5, 150 S.E. 144 (1929), we held it was error for the prosecutor to express his belief in the veracity of a defense witness.

Upon careful consideration of all the facts and circumstances presented in this case, we are of the opinion that the prosecuting attorney's closing argument violated the basic principles just discussed, and that the defendant was prejudiced by the remarks and denied a fair trial. The prosecutor injected his personal opinion as to the guilt of the defendant, asserted his belief in the honesty, sincerity, truthfulness, and good motives of his witnesses, while attacking the honesty and veracity of the defendant's

---

* DR 7-106(C)(4) provides that a lawyer shall not:

"Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, . . . or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

witnesses. He compared the defendant to a vulture and appealed to local prejudice by indicating the defendant came to West Virginia to victimize dumb hillbillies. On several occasions during the course of the argument he pointed to and directly addressed the defendant. He also argued facts not in evidence. For example, he suggested that Mrs. Finch used some of the money obtained by the false pretense to take ski trips to Snowshoe, and he argued that defendant had never worked a day in his life. Defendant's testimony on this latter point was to the contrary. The prosecutor's manifest purpose could only have been to inflame the minds of the jury in order to gain a conviction based on emotions rather than evidence. The defendant made objection throughout the course of closing argument and requested the trial court to grant a mistrial based on the prosecutor's remarks. This was sufficient to preserve the point for appeal. The trial court denied the motion for a mistrial and either overruled or failed to rule on any of the defendant's objections made during the course of the argument. No instructions were given to the jury telling them the prosecutor's comments were improper and that they should disregard them. While we do not wish to characterize the State's evidence in support of a conviction, it is fair to say that it was not overwhelming.

Critzer also contends that the trial court erred in not suppressing Sponaugle's in-court identification. The standard of law applicable here is set forth in Syllabus Point 3 of *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976):

> "In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the

confrontation, and the length of time between the crime and the confrontation."

Although it is clear that the pretrial show-up procedure employed in this case was unnecessarily suggestive given the fact that there was no emergency, we conclude, under the totality of the circumstances, that the pretrial identification procedures were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1973). The evidence adduced in the *in camera* hearing on the motion to suppress the in-court identification shows that Sponaugle had an ample opportunity to observe the defendant and that his attention was drawn to the defendant because it was unusual for a new Cadillac with out-of-state license plates to drive up and down the street in Franklin, West Virginia. The witness was certain of his identification upon the confrontation in the magistrate's office, and the length of time between the crime and the confrontation was only approximately thirty days. The witness testified that his in-court identification was based on his observation of the defendant near the scene of the crime, independent of his pretrial identification.

While it is a fact that the witness gave no prior description of the driver of the car prior to the photographic array and the confrontation, thus affording no basis for a comparison to gauge the reliability of the identification, we are not persuaded that a due process violation has occurred in view of the other factors present in the case establishing the reliability of the identification. The witness, through a photographic array, was able to identify Albert Kanney, an acquaintance of the defendant who also resided in Virginia, as the man who got out and back in the Cadillac in the church parking lot. The victim, Mr. Byrd, corroborated the witness' identification of Kanney by identifying him as the man who came to his house representing himself as an investigator to whom he gave the $2,400.00. Certainly the fact that the witness could identify Kanney indicates his identification of the defendant was reliable. In sum, under all the circumstances, we find no substantial likelihood of

misidentification and thus the trial court did not abuse its discretion in admitting the testimony.

For the foregoing reasons, we reverse and remand for a new trial.

*Reversed and remanded;*
*new trial awarded.*