# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-0713** (Greenbrier County 13-F-52)

**Norma G.,**
**Defendant Below, Petitioner**

**FILED**

**April 28, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The Petitioner Norma G.[1], by counsel Ryan H. Keesee, appeals her conviction for the felony offense of extortion. Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2013, Norma G. ("the defendant") was indicted for the offense of extortion.[2] Following a jury trial in October of 2014, the defendant was convicted of the offense of extortion. The evidence at trial revealed that in December of 2011, the defendant contacted Corporal Baker of the Greenbrier County Sheriff's Department and told him that she found her husband, J.G., viewing pornographic material with her eight-year-old daughter. The defendant advised Corporal Baker that she confronted J.G., and told him that if he did not give her a deed to his farm property, that she would go to the police. According to Corporal Baker, the defendant repeated this statement several times. The defendant told Corporal Baker that she now owned the property. The deed to the property was entered into evidence, and showed that J.G. and his son deeded the property to the defendant on August 23, 2011. The defendant reported the crime to police months after the incident allegedly occurred, when J.G. refused to leave the property.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] The June of 2013, indictment was the third superseding indictment in this matter. Petitioner was first indicted on February 8, 2012. A superseding indictment was issued in June of 2012. Those indictments were dismissed in October of 2012, and May of 2013.

1

J.G. testified at trial that after the defendant confronted him about her daughter, the defendant told him that she wanted the farm, and he attempted to buy his freedom from the defendant. J.G. testified that the only reason he deeded the farm to the defendant was to avoid prosecution. Corporal Baker testified that after speaking with a prosecuting attorney, he charged the defendant with extortion, based upon her receipt of the deed to J.G.'s property through accusing him of a crime.

During the trial, there was an incident involving an allegation of prosecutorial misconduct. On the second day of trial, the defendant's counsel alleged that the special prosecuting attorney, Kristen Cook, engaged in improper communications with the attorney for a potential defense witness, Kevin M. Upon the circuit court's inquiry, Mr. Hunter, counsel for Kevin M., testified as to the exchange stating that he was approached by Ms. Cook and a deputy, and that "I got a clear indication from Ms. Cook that if [Kevin M.] indicated that [he knew about the exchange of property for the defendant's silence], that could have an impact on the custody issue[3] and was I going to talk with him – would I talk with him, and I said, if I talk with him, I will tell him to tell the truth. And I felt like they – I had a feeling I was being told that so that I would, in some way, try to influence his testimony."

Ms. Cook apologized to the Court and to counsel. Ms. Cook stated that she invited Kevin M.'s counsel to trial in order to help him protect his client's interest. The circuit court found that Ms. Cook did not engage in prosecutorial misconduct, and that there was no evidence that the conversation was conveyed to Kevin M., although Kevin M. did not testify at trial. The defendant testified on her own behalf at trial. The jury returned a verdict of guilty of the offense of extortion.

In addition, post-trial it was discovered that a juror, ("Juror O") who was selected to serve on the defendant's jury panel, was not qualified to sit on a Greenbrier County jury. During jury selection, the State used a peremptory strike to remove Juror O from the jury panel. The defendant filed an appeal of the jury verdict to this Court. While the defendant's direct appeal was pending, and after learning that this juror was present for the initial voir dire, the defendant filed a motion for a new trial. In response, Judge Pomponio, who presided over the defendant's trial, sent a letter to this Court advising of the improper juror, and noting that he had previously dismissed another case as a result of this juror's ineligibility.

Subsequently, this Court filed a notice of intent to dismiss the defendant's appeal, as the defendant was granted a new trial, thereby rendering her appeal moot. Following receipt of this notice, the defendant's trial counsel and the State of West Virginia agreed to withdraw the defendant's original appeal. However, the circuit court never entered an order granting the defendant a new trial. The circuit court held a hearing on the defendant's motion for new trial on December 8, 2014. After hearing arguments regarding the unqualified juror, Judge Richardson, (who took the bench after Judge Pomponio retired), denied the defendant's motion for a new trial. The circuit court found that the defendant did not suffer prejudice as a result of this juror,

_____

[3] Prior to the trial, the witness and the defendant were involved in an abuse and neglect proceeding regarding their shared children. The circuit court granted custody to the witness.

and the State's use of a peremptory strike to remove the juror.

On January 14, 2015, the circuit court ordered that the defendant undergo a sixty-day diagnostic evaluation at the Lakin Correctional Center. The defendant was sentenced June 18, 2015, to one to five years of incarceration in the state penitentiary. Her sentence was suspended by the circuit court, and the court ordered the defendant to serve the remainder of her sentence on home confinement. The defendant now appeals her conviction to this Court.

The defendant raises several grounds on appeal. Since the alleged errors concern different principles of law, the applicable standards of review will be incorporated into the discussion of each issue. We note, generally, that, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996). In addition, "[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice." Syl. Pt.1, *State v. Easton*, 203 W. Va. 631, 510 S.E.2d 465 (1998) (citation omitted).

The defendant first argues that the extortion statute, West Virginia Code § 61-2-13 is unconstitutionally overbroad in that it does not specifically include the element of intent.[4] The defendant argues that the statute makes any statement that may result in pecuniary benefit to the speaker illegal, regardless of whether the statement is protected or privileged, in violation of the First Amendment of the United States Constitution, and article three, section seven of the West Virginia Constitution.

We have previously stressed the importance of our separation of powers doctrine, and the great deference to which the legislature is entitled in the interpretation and construction of a statute.

> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the

---

[4] West Virginia Code § 61-2-13 states, in relevant part,

> If any person threaten injury to the character, person or property of another person, or to the character, person or property of his wife or child, or to accuse him or them of any offense, and thereby extort money, pecuniary benefit, or any bond, note or other evidence of debt, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than five years.

W. Va. Code § 61-2-13.

3

constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Syl. Pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965). Further, "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970). Based on the plain words of the statute and the applicable case law governing the interpretation and construction of this statute, this Court finds that the statute is not overbroad, as it requires that the threats are made for a purpose: to "extort money, pecuniary benefit, or any bond, note or other evidence of debt." *See* W.Va. Code § 61-2-13. In addition, extortion is malum in se. *See generally Committee on Legal Ethics of the West Virginia State Bar v. Printz*, 187 W. Va. 182, 416 S.E.2d 720 (1992). Accordingly, we find no reversible error.

Next, the defendant argues that the circuit court erred by refusing to instruct the jury regarding the meaning of "criminal intent to commit extortion." At trial the defendant's counsel offered an instruction regarding the element of intent. This instruction was rejected by the circuit court. Regarding jury instructions, we have held,

> "[a] trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion." Syllabus Point 4, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 8, *State v. Foster*, 221 W. Va. 629, 656 S.E.2d 74 (2007). Concerning the offense of extortion, the jury herein was instructed that, "in order to prove the commission of the offense of "extortion", the State of West Virginia must overcome the presumption of innocence and prove, beyond a reasonable doubt," and prove that the defendant "accused Jack E. G. of an offense involving his alleged display of sexual material to a minor"; and thereby did obtained (sic) and extorted a certain tract or parcel of real estate situate in Greenbrier County, West Virginia." We find that this instruction was an accurate statement of the law, and that the jury was properly instructed that the State must prove that the defendant accused J.G. of a sexual offense for the purpose of obtaining property. Consequently we find no error.[5]

---

[5] The defendant neglects to include the proposed instructions in the appendix record. "The appellate review of a ruling of a circuit court is limited to the very record there made and will not take into consideration any matter which is not a part of that record." Syl. Pt. 2, *State v.*

The defendant also complains that the circuit court erred by refusing to grant her a new trial based upon the improper paneling of an unqualified juror, Juror O. The parties do not dispute that one of the jurors empaneled in the defendant's case, was not a resident of Greenbrier County and was therefore ineligible to sit on the jury panel in the underlying case.

> In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

*State v. Miller*, 197 W. Va. 588, 600-01, 476 S.E.2d 535, 547-48 (1996). Based on our review of the record, we find that the defendant's claim regarding Juror O lacks merit. The record reveals that while Juror O was not a resident of Greenbrier County at the time he was placed on the jury panel, Juror O did not serve on the defendant's jury. The State used one of it peremptory strikes to remove Juror O from the panel. As a result, the defendant did not suffer any prejudice. "In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice." Syl. Pt. 3, in part, *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013). Accordingly, we find no error.

The defendant next asserts as an assignment of error that she received ineffective assistance of counsel. The defendant complains that her counsel was ineffective because Judge Pomponio indicated to this Court that he intended to order a new trial in the defendant's case, as a result of the improperly paneled juror. However, the defendant's trial counsel failed to obtain an order to that effect. As a result, upon Judge Pomponio's retirement, Judge Robert Richardson, after holding a full hearing on the issue of the juror, denied the defendant's request for a new trial. We find that the record is incomplete with respect to the defendant's claim, and decline to review this assignment of error based on the same. Regarding ineffective assistance of counsel claims on direct appeal, we held,

> "[i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim." Syl. pt. 10, *State v. Triplett,* 187 W.Va. 760, 421 S.E.2d 511 (1992).

Syl. Pt. 11, *State v. Garrett*, 195 W. Va. 630, 466 S.E.2d 481 (1995). Accordingly, we decline to reverse the defendant's conviction on this ground.

---

*Bosley*, 159 W. Va. 67, 218 S.E.2d 894 (1975). Accordingly, we decline to review the defendant's proposed jury instruction, and limit our review to the record before this Court.

The defendant next argues that the circuit court erred in failing to declare a mistrial after being informed of prosecutorial misconduct. The defendant argues that the prosecutor's actions intimidated a witness, Kevin M., from testifying in the defendant's trial. Based upon our review of the record, we find no error. We are mindful that,

> "[t]he prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with his position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.' Syl. pt. 3, *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977)." Syl. pt. 1, *State v. Critzer,* 167 W.Va. 655, 280 S.E.2d 288 (1981).

Syl. Pt. 1, *State v. Hottinger*, 194 W. Va. 716, 461 S.E.2d 462 (1995).

Rule 4.4(a) of the West Virginia Rules of Professional Conduct state that, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." The State asserts that the prosecutor spoke to the witness' counsel in order to help him protect his client's interests. The record reflects that the prosecuting attorney explained on the record,

> I apologize to Mr. Hunter if he felt like I put him in a bad position. That was not my intentions, whatsoever. In fact, I asked him, maybe he should be here, today, to protect his client's interest. That was never my intention to put him in a bad position, or make him feel like I was trying to make him do something, and I want to apologize to him, directly, if that's how he felt.

The defendant argues that the prosecuting attorney's statements served no purpose other than to embarrass, delay, or burden Kevin M. We disagree. Here, the prosecuting attorney approached the witness's counsel in an attempt to inform him of potential consequences of his client testifying in a criminal trial, in order to help counsel assist the witness in acting in his own best interest. "[M]any situations arise in which a lawyer's communications on behalf of a client cannot avoid addressing conduct by another party that is both criminal and tortious. Inevitably, the question of which remedial routes will be taken must also be addressed." *Printz*, 187 W. Va. at 184, 416 S.E.2d at 722 (citing Hazard and Hodes, *The Law of Lawyering, A Handbook on the Model of Rules of Professional Conduct*, 4.4:103 (Prentice Hall Law & Business 1990). Further, the defendant has failed to show how she was prejudiced by the actions of the prosecuting attorney, as she was capable of providing a subpoena to the witness in order to compel his testimony at trial. Accordingly, we find no error.[6]

---

[6] The defendant also asserts that the prosecutor misrepresented the production of evidence (in the form of an audio recording), asserting that the prosecutor at first told the trial court that she was not in possession of the evidence, but later admitted to having possession of it.

The defendant also argues that the circuit court erred in refusing to dismiss her indictment pursuant to the three-term rule. The defendant claims that she was originally indicted for the offense on February 8, 2012, and that this matter should have been tried within the October of 2012 term of court. The defendant asserts that the delays in prosecution are reversible error. This Court has explained,

> [a] determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial.

Syl. Pt. 2, *State v. Foddrell*, 171 W. Va. 54, 297 S.E.2d 829 (1982).

The State counters that although five terms of court expired from the defendant's original indictment to trial, that the defendant moved for a continuance during the June and October of 2012 terms of court. As a result, those terms do not count toward the "three-term rule" calculation. We agree with respondent. Under the plain language of the statute,

> *Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court*, after the presentment is made or the indictment is found against him, without a trial, *unless the failure to try him was caused* by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or *by a continuance granted on the motion of the accused*; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict[.]

W. Va. Code § 62-3-21, in part, (emphasis added). The record reflects, and the defendant admits, that she joined two motions for continuances in the June of 2012 and October of 2012 terms of court, and as a result, those continuances are excluded from consideration in the calculation of the three-term rule. Consequently, we find that the defendant's argument lacks merit.

The defendant next complains that there was insufficient evidence to convict her of the offense of extortion. The defendant asserts that she did not extort the property, but that she was offered the property by J.G. in exchange for her silence. The State counters that the defendant admitted to extorting J.G. in exchange for not reporting the crime on several occasions, Further, J.G. testified that he signed the property over to the defendant in order to avoid prosecution. We have long held that,

---

As the evidence was provided to the defendant, introduced into evidence at trial, and heard by the jury, we find no prejudice and decline to reverse on this ground.

7

[t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Based upon our review of the record herein, when viewed in the light most favorable to the prosecution, we find that there is sufficient evidence to support the defendant's convictions. The State presented evidence at trial that J.G. conveyed the deed to the property on August 23, 2011, and that the defendant did not report the alleged sexual crimes against her daughter until December of 2011, when J.G. refused to move off of the property. Further, J.G. testified that the defendant confronted him in August and told him that she had evidence that he showed pornographic materials to her daughter, in the form of a tape recording, and that he could "sign over his farm" to her and leave, or she would report him to the police. Roger Baker of the Greenbrier County Sheriff's Department testified that the defendant told him numerous times that she told J.G. to sign over the deed to the property or she would report him to the police.

Regarding the sufficiency of evidence in a criminal trial, we have held,

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled

Syl. Pt. 3, *Guthrie*. Based on the forgoing, we find sufficient evidence to uphold the defendant's conviction for the felony offense of embezzlement.

The defendant also asserts that the trial court erred in suppressing the testimony of a clergyman. As the defense presented its case-in-chief, J.G.'s counsel, (from a related criminal proceeding) moved the trial court to suppress the testimony of a clergyman, who the defendant intended to call as a witness. The defendant asserted that this clergyman would testify that J.G. had "longstanding plans" to deed the property to the defendant. J.G.'s counsel argued that under West Virginia Code § 57-3-9, no member of the clergy "shall be compelled to testify in any criminal or grand jury proceedings . . . ." We have held that,

"[a] communication will be privileged, in accordance with W.Va.Code, 57–3–9 (1992), if four tests are met: (1) the communication must be made to a clergyman;

8

(2) the communication may be in the form of a confidential confession or a communication; (3) the confession or communication must be made to the clergyman in his professional capacity; and (4) the communication must have been made in the course of discipline enjoined by the rules of practice of the clergyman's denomination." Syllabus Point 3, *State v. Potter,* 197 W.Va. 734, 478 S.E.2d 742 (1996).

Syl. Pt. 2, *State v. Lowery*, 222 W. Va. 284, 664 S.E.2d 169 (2008). The record reflects that J.G. spoke with this person as a member of clergy, in a counseling setting, to discuss the situation with the defendant. As such, the circuit court's finding was not clearly erroneous, and we find no error in the circuit court allowing J.G. to assert that his communications with a clergyman were privileged under West Virginia Code § 57-3-9.

The defendant finally asserts that there is cumulative error in this case, sufficient to overturn the verdict. "'Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.' Syl. pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972)." Syl. Pt. 5, *State v. Walker,* 188 W. Va. 661, 425 S.E.2d 616 (1992). As we find no error, we decline to overrule the defendant's conviction on this ground.

For the foregoing reasons, we affirm.[7]

Affirmed.

**ISSUED:** April 28, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[7] The defendant also asserts as an assignment of error that the circuit court erred in its responses to the jury's questions during deliberations. An hour into jury deliberations, the circuit court received a note from the jury in which the jury claimed to be deadlocked. In response, the circuit court conferred with the parties, and issued a handwritten note to the jury that instructed the jury to review the evidence and deliberate. However, the record reflects that the defendant did not object to this procedure or the instruction to the jury. "Errors assigned for the first time on appeal will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court had objection been raised there." Syl. Pt. 1, *State v. Berry*, 227 W. Va. 221, 707 S.E.2d 831 (2011) (citation omitted). Accordingly, we decline to address this assignment of error.