# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 17-0913** (Greenbrier County 15-F-176)

**Crystal W.,**
**Defendant Below, Petitioner**

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Crystal W., by counsel Dana F. Eddy, appeals the Circuit Court of Greenbrier County's September 18, 2017, order sentencing her to a term of incarceration of two to ten years following her conviction of child abuse resulting in serious bodily injury.[1] Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order. The West Virginia Innocence Project, by counsel Velena Beety and Zachary Gray, filed an amicus curiae brief in support of petitioner's appeal. Petitioner filed a reply. On appeal, petitioner argues that circuit court erred in denying her a continuance in order to retain an expert witness and in permitting the State to present the victim to the jury.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The events giving rise to this appeal occurred in March of 2015. According to the record, upon returning from work, petitioner—the victim's mother—entered the bedroom of her eight-month-old child (the "victim"). The father then heard the victim crying before petitioner called for help. According to the father, he observed the victim seizing and told petitioner to call 9-1-1.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Paramedics took the victim to Greenbrier Valley Medical Center, which determined that their facility was not equipped to handle the victim's injuries. Doctors contacted Roanoke Memorial Hospital ("RMH"), which immediately dispatched an infant trauma unit. Doctors at RMH diagnosed the victim with Shaken Baby Syndrome ("SBS") based upon a "triad" of symptoms characteristic of the condition. As petitioner concedes, "[a]lthough the [victim] survived, he will be permanently in a vegetative, comatose state."

In October of 2015, the grand jury returned an indictment against petitioner for child abuse resulting in serious bodily injury, in violation of West Virginia Code § 61-8D-3(b).[2] Over the course of the next year, several different attorneys were appointed to represent petitioner. During that period, the State continued to release discovery, including up to less than three months prior to trial. Specifically, in March of 2017, petitioner obtained a continuance based on the State's production of the victim's medical records from RMH. The State did not oppose the continuance, given that its recent discovery responses were delayed due to the subpoena's rejection by RMH.

At this point, trial was scheduled to begin on June 21, 2017. Three days prior to trial, on June 19, 2017, petitioner filed a motion for public funding for expert assistance and a motion to continue. In the motion for an expert, petitioner stated that, during a meeting between petitioner's counsel and the State, "the State verbally advised Counsel for the Defendant that the State did not intend to present any evidence of the medical treatment of the injured child . . . provided at [RMH] and would rely on the medical evidence from Greenbrier Valley [Medical Center] only." Despite this prior assertion, petitioner indicated that "at a meeting held [nine days prior to trial on] June 12, 2017, the State . . . advised counsel that it . . . intend[ed] to present evidence, and presumably expert testimony thereon, of the treatment of the injured child at hospital(s) in Roanoke, Va." Petitioner additionally argues that this decision was made in spite of the fact that the State never disclosed an expert witness in its witness disclosures. According to petitioner's counsel, although the medical records from RMH were provided in discovery, "[c]ounsel did not place much emphasis thereon since he was operating under the belief that [they] would not be used by the State at trial." Petitioner's counsel also indicated in the motion that, five days prior to trial, he attended a continuing legal education class regarding SBS where he learned that many experts believed that the "triad" of symptoms could be caused by other forms of trauma, many of which are the result of an accident. Accordingly, and "in light of recent evidentiary developments in th[e] case and recently discovered information regarding the potential availability of experts," petitioner's counsel asked that the court permit petitioner to retain an expert witness and continue the trial. The State responded to petitioner's motion and disputed that it had previously advised petitioner it would not present evidence obtained from RMH. The State further argued that it provided petitioner with a copy of the victim's RMH medical records on or about March 13, 2017,

---

[2]According to West Virginia Code § 61-8D-3(b), "[i]f any parent . . . shall abuse a child and by such abuse cause said child serious bodily injury as such term is defined in section one, article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony." Additionally, "serious bodily injury" is defined in West Virginia Code § 61-8B-1(10) as "bodily injury which creates a substantial risk of death, which causes serious or prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ."

evidencing its intention to introduce the material and highlighting the fact that petitioner sought, and obtained, a continuance on the basis of the late discovery responses. The State also asserted that it already compelled the appearance of witnesses for June 21, 2017, including several individuals from out of the state, and would be prejudiced by a continuance. The circuit court ultimately denied petitioner's motions, finding that they were "not filed in a timely manner."

Trial began on June 21, 2017. Following jury selection, the State requested that the court allow it to introduce the victim to the jury. Petitioner objected, arguing that it served no purpose "except to unnecessarily and unfairly inflame the jury," in addition to other grounds for the objection. The court granted the request, however, finding that one of the elements necessary to obtain a conviction is that the victim have a serious physical injury. Accordingly, the court ruled that the victim could be introduced to the jury if it would "not [be] harmful to the [victim] in any way, and [was] only briefly and . . . only for the purpose of showing the [victim's] current physical condition." Prior to opening statements, petitioner again objected to the State presenting the victim to the jury and offered to stipulate to the fact that the victim suffered a serious bodily injury. The State refused the stipulation and argued that the extent of the victim's injuries was intertwined with the causation of the injuries, in addition to the jury being entitled to meet the victim. The circuit court agreed with the State, finding that "in order to understand what the doctor says happened, [the jury will] have to see [the victim's] current physical condition." Accordingly, during the State's opening statement, the State brought the victim into the courtroom to introduce him to the jury. The jury thereafter convicted petitioner of the one count of child abuse resulting in serious bodily injury, and the circuit court sentenced her to a term of incarceration of two to ten years. It is from the sentencing order that petitioner appeals.

In her first assignment of error, petitioner alleges that the circuit court erred in denying her motion to continue, "despite the urgent need for an expert witness and the State's delay in designating an expert witness." Upon our review, however, we find no error.

> "The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made." Syllabus Point 1, *State v. Jones*, 84 W.Va. 85, 99 S.E. 271 (1919).

Syl. Pt. 1, *State v. Richardson*, 240 W. Va. 310, 811 S.E.2d 260 (2018). Further,

> "[w]hether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." Syllabus Point 3, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979).

*Id*. at 311, 811 S.E.2d at 260, syl. pt. 2.

As petitioner concedes, she filed her motions for an expert witness and continuance three days prior to trial. According to petitioner, the late filing was a result of her reliance on the State's assurance that it would not introduce medical records from RMH at trial. This argument, however, is entirely unsupported by the record. In opposition to petitioner's motions, the State disputed that it ever made such an assurance. The State further pointed out that it provided petitioner the records in question in discovery in March of 2017, evidencing its intention to use them at trial. Even more importantly, the State argued that petitioner moved for, and received, a continuance of the trial date upon receiving those records in order to review them. In fact, at the hearing in March of 2017 where petitioner was granted a continuance based upon the disclosure of these records, the circuit court engaged in a discussion of the nature of the records as they related to the State's prosecution, and the following exchange occurred:

> THE COURT: Does it look like a—what do you call it? Shaken baby syndrome type of case?
>
> [PROSECUTOR]: Yes, sir.
>
> THE COURT: So, the medical records are pretty critical, aren't they?
>
> [PROSECUTOR]: They are, Your Honor.

A review of the record shows that, contrary to petitioner's assertion that she was unaware these medical records would be introduced, the State provided them in discovery, made it clear that these specific records would be "critical" to the prosecution, and did not oppose the first continuance petitioner was granted so that she could review the records and "regroup [to] be in a trial posture."

Petitioner further asserts that the State's failure to designate an expert witness, coupled with counsel's recent discovery that some medical professionals question the accuracy of SBS diagnoses based upon the triad of symptoms present in this case, necessitated a continuance on the eve of trial. Again, however, the record does not support petitioner's assertion. Most importantly, petitioner fails to include any documentation to support her assertion that "[t]he State did not inform [p]etitioner's counsel that it intended to call an expert witness until . . . nine days before trial." Instead of including copies of the State's witness disclosures[3] or other corroborating documents in the appendix to support this assertion, petitioner repeatedly cites to her own motion for an expert to establish that the State did, in fact, wait until shortly before trial to designate an expert. Petitioner's unsupported assertions in this motion, however, are insufficient to establish that the State delayed designating an expert witness. Petitioner further asserts that a witness who was ultimately designated as an expert was originally "characterized as that of a custodian of records." However, petitioner's citation to the record in support of this assertion merely indicates that the State secured a witness who would testify about the RMH records. Petitioner fails to reference anything in the record that supports the assertion that the witness was characterized only

---

[3]In her brief, petitioner supports her assertion that "[t]he State's expert was not formally disclosed until three days before trial" by referencing a line in the certified docket sheet reflecting the filing of the State's witness list. Given that the docket sheet contains no specific information contained in the disclosure, this citation lacks any substantive corroboration of petitioner's claims.

as a records custodian. Based upon the nature of the case below, it was unreasonable for counsel to believe that the State would not introduce some expert testimony in prosecuting the case, given that it turned entirely on the opinions of medical personnel as to whether the victim's injuries were non-accidental. Regardless of counsel's late familiarization with the underlying subject matter, the fact remains that the need for an expert witness, as asserted by petitioner, should have been apparent from the outset of the proceedings by the very nature of the evidence and the allegations against petitioner.

Finally, while petitioner argues that the circuit court "assess[ed] the majority" of the continuances granted in the trial against her, the record similarly does not support this assertion. In response to petitioner's renewed objection to the circuit court's denial of her motion for a continuance, the circuit court clearly ruled that a continuance at that late stage was not warranted because the court did not "think that there's anything new or novel that's come out [at] the last minute." Further, the court indicated that the State only intended to present five witnesses and that "[t]hese witnesses were known . . . for some time." While it is true that the court discussed the age of the case as a factor motivating the denial of a continuance, it is clear that the court believed that petitioner had ample time to move for an expert witness, given that the nature of the case had not evolved over time.

Based on the foregoing, it is clear that the court did not abuse its discretion in denying petitioner's motion for a continuance in order to obtain an expert witness. As addressed above, the reasons petitioner presented to the court at the time the continuance was requested are not compelling, especially considering that the factual assertions petitioner relies on to establish that the delay in making her request were attributable entirely to the State are unsupported by the record. Further, petitioner cannot show that the denial of her motion for a continuance injured or otherwise prejudiced her rights. As set forth above, petitioner was given ample time to secure an expert witness to rebut the State's theory that she inflicted non-accidental injuries upon the victim, including a prior continuance granted in March of 2017 after the State disclosed the victim's medical records. Accordingly, we find that petitioner is entitled to no relief.

Finally, petitioner argues that the circuit court erred in "allow[ing] the State to use a disabled child as a prop, intentionally inflaming the jury." According to petitioner, she was unfairly prejudiced by the circuit court allowing the State to introduce the victim to the jury in furtherance of establishing the necessary element that he suffered a serious bodily injury. In support of her argument, petitioner cites to *State v. Critzer*, 167 W. Va. 655, 661, 280 S.E.2d 288, 292 (1981), to assert that error occurred because the State's action was designed to "inflame the minds of the jury in order to gain a conviction based on emotions rather than evidence." Although petitioner asserts that *Critzer*, while not directly on point, represents "[t]he clearest analogy to the present case," we find that it is not controlling. In reaching the conclusion that the prosecutor's actions in that case were intended to appeal to the jury's emotions, the Court noted that the offending conduct included remarks by the prosecutor that misrepresented the evidence and, in some instances, constituted the argument of facts not in evidence. *Id*. at 660-61, 280 S.E.2d at 292. Such conduct was not present in the case on appeal. Far from arguing facts not in evidence in order to appeal to the jury's sympathies, the State's introduction of the victim to the jury in this case cannot be said to have been a misrepresentation of any kind, given that the record shows that the victim's appearance,

readily observable by the jury, accurately represented the victim's physical state and the effect of his injuries.[4] Accordingly, we find that petitioner is not entitled to relief in this regard.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 17, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[4]In support of this argument, petitioner also asserts that, in an attempt to obviate the need to introduce the victim to the jury, she offered to stipulate to the extent of the victim's injuries. We note, however, that the State was not required to accept this stipulation. *See Old Chief v. U.S.*, 519 U.S. 172, 186-87 (1997) ("[A] criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.").