**FILED**

**January 18, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0034** (Cabell County 19-F-164)

**Joseph Chase Hardin,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Joseph Chase Hardin, by counsel Abraham J. Saad, appeals from the Circuit Court of Cabell County's October 23, 2020, sentencing order. The State of West Virginia, by counsel Patrick Morrisey and Katherine M. Smith, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and R.H. met at a church near Marshall University around August 26, 2018, and their relationship developed through their involvement with campus ministries in the Fall of 2018. On October 7, 2018, petitioner raped R.H.

Petitioner was indicted by a Cabell County grand jury in June of 2019 on four counts of second-degree sexual assault. Counts I and II of the indictment charged petitioner with second-degree sexual assault of another individual F.C.,[1] while counts III and IV charged petitioner with second-degree sexual assault of R.H. Although petitioner's conduct as to R.H. was presented to

---

[1] Inasmuch as petitioner was not convicted of the counts concerning F.C., and they are not relevant to this appeal, details of these counts (including F.C.'s testimony at trial) are not addressed herein.

1

the grand jury on two prior occasions, the grand jury did not return an indictment in those earlier proceedings.[2]

Prior to trial, the State filed a motion in limine "to prohibit the defense from mentioning at trial or questioning any witness at trial as to why there was testimony presented at three separate occasions to the grand jury in this case." Petitioner argued that the fact that there were multiple grand juries was relevant. On the first day of trial, August 11, 2020, the circuit court heard argument on the State's motion regarding the multiple grand jury proceedings. At that time, the circuit court determined that the defense could "probably" reference the multiple grand jury proceedings, and that the court would rule on specific objections raised by the State during trial. The defense referenced the multiple grand jury proceedings in its opening statement. On the second day of trial, upon a renewed objection by the State, the circuit court restricted references to the multiple grand jury proceedings, except for use as impeachment evidence.

Petitioner represents that, at the outset of trial, he filed his own motion in limine and "made oral objections" to exclude the State from eliciting testimony about R.H.'s religious beliefs in an effort to bolster her testimony.[3] At trial, there was considerable testimony about where petitioner met R.H. and how their relationship stemmed from their involvement with a campus ministry group. This testimony was elicited by both defense counsel and the State. In fact, petitioner's counsel stated in opening argument that R.H. and petitioner met at church and that "I think it's very important since it was mentioned that [R.H. was] saving herself for marriage and religion came to be a part of the play."

R.H. testified that she met petitioner at her church. She testified that religion was important to her and that she told petitioner prior to October 7, 2018, that "[b]ecause of [her] faith," she "was waiting until marriage to have sex." As to the events of October 7, 2018, she testified she had made plans to meet petitioner at Ritter Park but they ultimately got in the car to drive around. Thereafter, petitioner anally raped her. R.H. testified that she told her Bible study leader, Janna Salyers, about the sexual assault. She then told her parents and ultimately reported the incident to law enforcement. Defense counsel cross-examined R.H. about how she came to know petitioner and their budding relationship. Petitioner's counsel also cross-examined R.H. about text messages between petitioner and R.H. that discussed God and living a Christian life.

At trial, the State called two fact witnesses who knew R.H. through the campus ministry at Marshall University, Mikayla Alkire and Ms. Salyers. Consistent with R.H.'s testimony, Ms. Alkire also testified that R.H. met petitioner at church. Petitioner's counsel did not object to any of Ms. Alkire's testimony. Ms. Salyers testified that she was the leader of R.H.'s small Bible group with the college ministry. On cross-examination, petitioner's counsel asked Ms. Salyers about

---

[2] The earlier two grand jury proceedings were focused only on the crimes against R.H. During the third presentation to the grand jury, the State presented the additional crimes against F.C.

[3] Petitioner fails to provide this Court with any citation to the record as to when the motion in limine and objections were made and, importantly, the circuit court's rulings thereon.

petitioner's "level of devoutness." The State also called Detective Matthew Null who provided detailed testimony about his interview of petitioner.

Petitioner testified at trial as to his involvement with the Baptist Campus Ministry, how he came to know R.H., and the nature of his relationship with R.H. Petitioner's counsel also asked him about the relationship that both petitioner and R.H. had with God. Further, petitioner testified that he did not assault R.H., but instead engaged in consensual sexual conduct with her.

The State did not reference religion, religious beliefs, or faith during its closing argument. During petitioner's closing, however, counsel told the jury that petitioner and R.H. "built th[eir] relationship up, and they built it on I think their mutual devotion to Christ. I mean, that's undisputed. Some people are more pious, more religious than others. Some aren't. Just how life is."

During the State's rebuttal closing argument, the State discussed portions of Detective Null's interview of petitioner and published portions of this transcript to the jury on an overhead projector. Petitioner's counsel did not object during the argument. Instead, after the State concluded the rebuttal, petitioner's counsel objected that some of the items discussed on rebuttal were not in evidence.

During jury deliberations, the jury asked the court if there was a transcript of Detective Null's interview of petitioner. The court told the jury that they had all of the exhibits, and they would only have the transcript if it was introduced as an exhibit. After further deliberations, the jury told the court that it had reached an agreement on one count but not on the remaining three counts of the indictment. Following discussions with counsel, the court gave the jury an *Allen* charge.[4]

The jury ultimately returned its verdict of not guilty as to counts I and II (relating to F.C.) and guilty as to counts III and IV (relating to R.H.). Petitioner filed a motion for a new trial on September 17, 2020, contending that there was insufficient evidence to support his convictions. He also argued that the State's witnesses lacked credibility and that the State introduced impermissible hearsay and religious character evidence. Petitioner then filed a renewed and supplemental motion for judgment of acquittal under Rule 29 of the West Virginia Rules of Criminal Procedure, arguing that impermissible evidence was presented to the jury in violation of Rule 610 of the West Virginia Rules of Evidence.[5] The circuit court denied both motions and sentenced petitioner to not less than ten nor more than twenty-five years on each conviction, with those sentences to run consecutively. Petitioner now appeals

---

[4] *Allen v. United States*, 164 U.S. 492 (1986).

[5] Rule 610 of the West Virginia Rules of Evidence provides that "[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible to attack or support the witness's credibility."

On appeal, petitioner argues that the circuit court erred in restricting him from presenting evidence about the three separate grand jury hearings. Next, he argues that the court improperly allowed character evidence as to R.H. in violation of Rule 610 of the West Virginia Rules of Evidence. Additionally, he argues that the State engaged in prosecutorial misconduct that prejudiced him at trial. Finally, he argues that the circuit court committed cumulative error that violated his due process rights. We will address each of petitioner's arguments below.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner's first two assignments of error address the circuit court's evidentiary rulings. We have stated that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

First, petitioner argues that the circuit court erred in limiting his ability to discuss the fact that the grand jury did not issue an indictment until after his case was presented to it for a third time. Notably, however, the circuit court did not restrict petitioner's ability to reference the multiple grand jury proceedings at the outset of the trial despite the State's motion in limine on this topic. Instead, the circuit court determined that petitioner could "probably" reference the multiple grand jury proceedings, but the court reserved the right to rule on specific objections raised by the State at trial. Accordingly, petitioner's counsel referenced the multiple grand jury proceedings in its opening statement and the State again objected that the three separate grand jury proceedings were irrelevant to the case. It was not until the second day of trial, and after the State again raised the issue, that the circuit court restricted references to the multiple grand jury proceedings, except for use as impeachment evidence.

Initially, we note that petitioner's argument as to this assignment of error is procedurally deficient as he fails to provide a single citation to the record in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. Further, he fails to cite any legal authority in support of his argument that the circuit court's restriction of this information was improper. Recently, we noted that

> Rule 10 of the Rules of Appellate Procedure was designed to simplify the appeal process and to help lawyers file clear, concise, and organized briefs. "Although we liberally construe briefs in determining issues presented for review," *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996), we have often said that "a lawyer has a duty to plead and prove his case in accordance with established court rules." *State, Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995). Lawyers who fail to follow our appellate rules inevitably

generate a disjointed, poorly written, or difficult to understand brief, and they should not anticipate that this Court will find or make their arguments for them. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

*Metro Tristate, Inc. v. Pub. Serv. Comm'n of W. Virginia*, 245 W. Va. 495, __, 859 S.E.2d 438, 445-46 (2021) (footnote omitted). Despite petitioner's inadequately briefed argument, respondent argues that the prior grand jury proceedings where the grand jury did not indict petitioner do not make any fact presented at petitioner's trial more or less probable and is not a "fact of consequence in determining the action" as required by West Virginia Rule of Evidence 401. We agree with respondent and refuse to disturb this ruling of the circuit court on appeal.

Next, petitioner maintains that the court erred in permitting evidence of the victim's religious beliefs as a means to support her credibility, in violation of Rule 610 of the West Virginia Rules of Evidence. Respondent maintains that petitioner cannot argue error where his own counsel made repeated references to the victim's religious beliefs and, further, where the evidence of religion was not used to bolster the victim's credibility.

At trial, petitioner did not raise a contemporaneous objection pursuant to Rule 610. Accordingly, we undertake a plain error analysis of this assignment of error. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). In *Miller*, we held that "[h]istorically, the 'plain error' doctrine 'authorizes [an appellate court] to correct only 'particularly egregious errors' . . . that 'seriously affect the fairness, integrity or public reputation of judicial proceedings[.]'" 194 W. Va. at 18, 459 S.E.2d at 129.

Upon our review, we refuse to find that petitioner satisfied even the first element of a plain error analysis as there was no error and Rule 610 was not violated. Initially, we note that the religious beliefs of both petitioner and the victim were brought out by both petitioner[6] and the State. Further, per the record, the religious beliefs of the victim were not used to support R.H.'s credibility. Instead, her religious beliefs were intertwined with the narrative of how the victim initially became acquainted with petitioner, how their relationship evolved, and to address the victim's testimony that she did not consent to intercourse with petitioner. Accordingly, petitioner is entitled to no relief as to this assignment of error.

---

[6] The record reveals that petitioner's counsel embraced religion as a part of petitioner's theory of the case. Counsel inquired into the victim's church attendance, religious practices, and Christian values throughout his cross-examination of the victim and during the testimony of one of the witnesses. Petitioner's counsel also made reference to both petitioner's and R.H.'s religious beliefs during closing arguments.

Next, petitioner maintains that the State committed prosecutorial misconduct during closing arguments.[7] We review a claim of prosecutorial misconduct under the following standard:

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995). "[T]he long and well-established rule [is] that prosecutors are entitled to great latitude in closing arguments and it is only where improper remarks are clearly prejudicial or result in manifest injustice that reversal is proper. Syl. pt. 2, *State v. Brewster*, W.Va., 261 S.E.2d 77 (1979), quoting in part, Syl. pt. 1, *State v. Dunn*, W.Va., 246 S.E.2d 245 (1978)[.]" *State v. Critzer*, 167 W. Va. 655, 658-59, 280 S.E.2d 288, 291 (1981).

Petitioner complains that the State displayed and discussed inadmissible evidence from Detective Null's interview with him during its rebuttal. Consistent with petitioner's previous assignment of error, counsel did not make a contemporaneous objection to the publication of this information, but instead waited until the State had completed its rebuttal to raise the objection. Even then, the objection was insufficient. Counsel merely stated, "I believe there were some things presented that weren't in evidence. [The State] referenced Null, but that's all I'm going to - - I just wanted to put that on the record." Likewise, on appeal, petitioner failed to articulate which portions of the interview were published to the jury and what portions were deemed "inadmissible" by the circuit court.

Although counsel's objections were inadequate, analyzing this assignment of error consistent with the *Sugg* factors, we note this assignment of error still fails. Detective Null testified extensively to the substance of his interview with petitioner. Therefore, the presentation of portions of Detective Null's typed interview with petitioner simply recapped his testimony and did not have a tendency to mislead the jury or prejudice petitioner. Additionally, the prosecutor's remarks were isolated to the State's rebuttal. Further, the strength of the proof to establish petitioner's guilt was strong even absent the State's remarks during closing arguments. Finally, the comments and typed statement did not divert attention to extraneous matters. Therefore, we decline to find that the prosecutor's remarks or use of Detective Null's typed statement were prejudicial or resulted in manifest injustice as to make petitioner's conviction a denial of due process.

Finally, petitioner argues there was cumulative error below. Although a conviction may be set aside where the cumulative effect of numerous errors prevent a defendant from receiving a fair trial, this doctrine only evaluates the effect of matters determined to be error. *State v. Walker,* 188

---

[7] Petitioner also claims that the prosecutor committed prosecutorial misconduct by introducing evidence of the victim's religious beliefs in violation of Rule 610 of the West Virginia Rules of Evidence. However, as addressed above, we are not persuaded by this argument.

W. Va. 661, 425 S.E.2d 616 (1992). Because we find that there was no error in this case, the cumulative error doctrine does not apply.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 18, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William D. Wooton