607 S.E.2d 806

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**James Paul HAMRICK, Defendant Below, Appellant.**

**No. 31669.**

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 8, 2004.

Filed: Nov. 12, 2004.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for the Appellee.

David Karickhoff, Sutton, for the Appellant.

## PER CURIAM.

This is an appeal by James Paul Hamrick from an order of the Circuit Court of Webster County finding the Appellant guilty in a magistrate jury trial of the offense of battery. The Appellant appeals the battery conviction, seeking reversal with directions to enter an order granting his motion for judgment of acquittal, or in the alternative, his motion for new trial. Upon thorough review of the briefs, arguments of counsel, record, and applicable precedent, we reverse the Appellant's conviction and remand for entry of an order granting the Appellant a new trial.

### I. Factual and Procedural History

On April 3, 2002, shortly after 4:00 p.m., the Appellant was involved in an altercation with Ms. Tina Farley in a grocery store in Webster Springs, West Virginia. During a March 18, 2003, magistrate court jury trial, Ms. Farley alleged that the Appellant made unlawful and intentional physical contact of an insulting or provoking nature, pushing her, and engaging in heated discussion. A surveillance videotape from the grocery store's security system shows the location of the altercation and evidences that both parties shoved each other. Because of the normal rotation of the video cameras, however, the videotape does not show the beginning of the altercation or in any manner demonstrate which party instigated the dispute. The video shows only approximately five to seven seconds of the relevant time period. There is no audio component on the tape; it is thus impossible to hear what words were being exchanged during the altercation.

Ruth Ann Hamrick, the Appellant's wife, had previously worked with Ms. Farley in the Webster County Sheriff's Office. Mrs. Hamrick's employment had been terminated three years prior to the April 2, 2002, grocery store altercation, and she had instituted a civil action against the Sheriff's Office for wrongful discharge, settled out of court in July 2001. Prior to Mrs. Hamrick's termination, Ms. Farley had apparently accused Mrs. Hamrick of stealing coffee money. Consequently, the State contended that tensions existed between Ms. Farley and Mr. Hamrick regarding his wife's termination and the surrounding circumstances.

Contrary to Ms. Farley's testimony, the Appellant testified that Ms. Farley had instigated the contact in the grocery store by blocking him. He testified that he had asked her to move and that she had refused to move. Rather, she leaned back onto his arm as he attempted to go behind her. He leaned back toward her and continued to move around her between the soda display and the open portion of the grocery store aisle. He explained that he did not make unlawful or intentional physical contact of an insulting or provoking nature with Ms. Farley. No other witnesses to the incident testified.

During the prosecutor's rebuttal closing argument at trial, the following colloquy transpired:

Mr. Hall [attorney for the State]: [T]he suggestion that Mr. Hamrick's wife won a settlement, and therefore, the Sheriff's office was out for revenge against him or her, and that this charge was trumped up and fabricated, and here we are, and it's surreal. I have a duty as a prosecutor to uphold the law, and if I thought for a moment that this was some trumped up charge as it has been suggested here, I would have dismissed this case.

I reviewed this independently, and independently of all this -

Mr. Karickhoff [attorney for the Appellant]: I object to this. Counsel is vouching this case. He's not allowed to do that, Your Honor.

Mr. Hall: He opened the door.[1] They made the suggestion -

The Court: I'll allow him to continue, but keep it brief.

Mr. Hall: I just was to tell you [the jury] that this case is being prosecuted because this was a decision of me, and I wasn't involved in this. That's all I have to say.

Subsequent to the magistrate court jury trial, the Appellant was found guilty of the offense of battery. The lower court affirmed that conviction by order entered July 7, 2003. On appeal to this Court, the Appellant contends that (1) the prosecutor made remarks personally vouching the State's case during rebuttal closing argument; and (2) the verdict is not supported by substantial evidence and is against the weight of the evidence.

## II. Standard of Review

■ In evaluating an Appellant's claim of prosecutorial misconduct, we are guided by the principles enunciated in syllabus point six of *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995):

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

## III. Discussion

The Appellant maintains that the prosecutor improperly asserted his personal opinion regarding the justness of the case and the

legitimacy of the claims forwarded against the Appellant. Rule 3.4(e) of the West Virginia Rules of Professional Conduct states, in pertinent part, that a lawyer shall not "in trial ... assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil judgment or the guilt or innocence of an accused." This principle was encompassed within this Court's statement in syllabus point three of *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981), as follows: "It is improper for a prosecutor in this State to '[A]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of the accused....' ABA Code DR 7–106(C)(4) in part." *See also* Syl. Pt. 3, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987). In *Critzer*, this Court reversed a conviction, reasoning that the prosecutor had acted improperly by comparing the accused to a "vulture" and by asserting the prosecutor's own personal "belief in the honesty, sincerity, truthfulness, and good motives of his witnesses...." 167 W.Va. at 660–61, 280 S.E.2d at 292.

■ We further observed in *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), that "the purpose of the *Critzer* rule is to prevent the use of the prosecutor's *status* as a means to bolster witness credibility." 180 W.Va. at 351, 376 S.E.2d at 557. As this Court explained in the syllabus of *State v. Moose*, 110 W.Va. 476, 158 S.E. 715 (1931),

> An attorney for the state may prosecute vigorously, as long as he deals fairly with the accused; but he should not become a partisan, intent only on conviction. And, it is a flagrant abuse of his position to refer, in his argument to the jury, to material facts outside the record, or not fairly deducible therefrom.

---

1. Counsel for Appellant's suggestion that defense counsel had opened the door to such discourse stems from the fact that defense counsel had presented a scenario from which the jury could have concluded that the decision to prosecute was directed by the victim and that the prosecution was in retaliation for Mrs. Hamrick's civil action against the Sheriff's office. Defense counsel also stated that he agreed with his client, saying that he thought Ms. Farley was "trying to score some points with the sheriff."

*See also United States v. Beasley,* 102 F.3d 1440, 1449 (8th Cir.1996), *cert. denied, Beasley v. United States,* 520 U.S. 1246, 117 S.Ct. 1856, 137 L.Ed.2d 1058 (1997) ("Impermissible vouching may ... occur when the government implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility"); *State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805, 818 (2001), *cert. denied, Shuler v. South Carolina,* 534 U.S. 977, 122 S.Ct. 404, 151 L.Ed.2d 306 ("Improper vouching occurs when the prosecution places the government's prestige behind a witness by making explicit personal assurances of a witness' veracity, or where a prosecutor implicitly vouches for a witness' veracity").

■ This Court has addressed allegedly prejudicial statements by prosecutors on several occasions. In syllabus point three of *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court explained as follows:

The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

In Justice Starcher's concurrence to *State v. Swafford,* 206 W.Va. 390, 524 S.E.2d 906 (1999), he fittingly observed that "[a] prosecuting attorney is not just an officer of the court, like every attorney, but is also a high public officer charged with representing the people of the State." 206 W.Va. at 398, 524 S.E.2d at 914. Justice Starcher continued as follows:

Wearing the cloak of the office, a prosecutor can therefore usually exercise great influence upon jurors. Because of this, the conduct and language of the prosecutor in a trial in which the accused's liberty is at stake should be forceful but fair, based upon the evidence, and not directed towards gaining a conviction through the aid of passion, prejudice or resentment.

*Id.,* 524 S.E.2d at 914.

■ This Court has also consistently endeavored to attain a balanced resolution to allegations of prosecutorial misconduct by recognizing that reversal is not warranted unless a prosecutor's remarks are sufficiently prejudicial. *See State v. Hobbs,* 178 W.Va. 128, 358 S.E.2d 212 (1987). Syllabus point five of *State v. Ocheltree,* 170 W.Va. 68, 289 S.E.2d 742 (1982), explains that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syllabus point five of *Sugg* expresses the same principle, as follows: "A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." 193 W.Va. at 393, 456 S.E.2d at 474.

■ In applying these principles to the case *sub judice,* our determination of whether the allegedly improper prosecutorial comments were so damaging as to require reversal is guided by syllabus point six of *Sugg,* as outlined above. It is our conclusion that the prosecutorial remarks at issue had a significant "tendency to mislead the jury and to prejudice the accused." *Sugg,* 193 W.Va. at 393, 456 S.E.2d at 474. The remarks by the prosecutor in this case specifically addressed the prosecutor's personal role in deciding that the case was meritorious and should be prosecuted. The prosecutor referenced his own personal "duty" to ensure that non-meritorious cases were not advanced through his office.

Second, we find that the remarks, while somewhat isolated within the context of the rebuttal closing argument, were not so detached or singular as to excuse their utterance. The third prong of syllabus point six of *Sugg* requires this Court to examine the issue of "the strength of competent proof introduced to establish the guilt of the accused" even "absent the remarks." *Id.* at 393, 456 S.E.2d at 474. Our review of the evidence in this regard indicates that the

testimony established a controversy between the parties regarding their recollection of the altercation. Particularly in this instance, it is especially damaging to the jury's ability to remain objective when the prosecutor insists that he had "independently reviewed" this matter, that his "duty" as a prosecutor required him "to uphold the law," and that he would "have dismissed the case" if he had "thought for a moment that this was some trumped up charge...."

Regarding the fourth element of syllabus point six of *Sugg*, "whether the comments were deliberately placed before the jury to divert attention to extraneous matters," it is this Court's opinion that such intent was inherent within the prosecutor's comments. *Id.* at 393, 456 S.E.2d at 474. The "extraneous matter" to which the jury's attention was diverted was the prosecutor's own personal role in verifying the legitimacy of the criminal action brought against the Appellant. Such statement essentially places the government's prestige behind the complaining witness and constitutes an offer of personal opinion regarding the claim.

As this Court accentuated in *England*, the underlying objective of the *Critzer* rule is the prevention of "the use of the prosecutor's *status* as a means to bolster witness credibility." 180 W.Va. at 351, 376 S.E.2d at 557. We believe that the *Critzer* rule was violated by the prosecutor's remarks in this case. The prosecutor's remarks can be seen as implying a sense of superior, additional knowledge, imploring the jury to trust him personally based upon his duty as a prosecutor. We find that manifest injustice has resulted through prosecutor's comments and that the Appellant was prejudiced thereby.

Moreover, we note that our review of the record in this case, including the witnesses' testimony and the electronic evidence, suggests a rather equal balance between that favoring the state's case and that supporting the defenses asserted. In that light, the jury's credibility determinations likely became a dominant factor in its decision finding the defendant guilty. In such a scenario, there is a strong possibility that the jury's evaluation of the evidence may have been tilted toward a finding of guilt beyond a reasonable doubt through inappropriate prosecutorial comment.

Based upon the foregoing, we reverse the Appellant's conviction and remand this matter for entry of an order granting the Appellant a new trial.

Reversed and Remanded.