IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

FILED

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0239

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

DAVID RAY THOMAS,
Defendant Below, Petitioner.

Appeal from the Circuit Court of Ohio County
The Honorable Michael J. Olejasz
Case No. 18-F-15

AFFIRMED

Submitted:  September 12, 2023
Filed:  November 8, 2023

Devon T. Unger, Esq.
West Virginia Innocence Project
Morgantown, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
William E. Longwell, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WOOTON dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.    "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion.  By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*."  Syllabus Point 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

2.    ""'The decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court.'  Syllabus point 8, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989)."  Syllabus Point 1, *State v. Costello*, 245 W. Va. 19, 857 S.E.2d 51 (2021).

3.    "'The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry.  The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense.  The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense.  *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982)' Syl. Pt. 1, *State v. Jones*, 174 W. Va. 700, 329 S.E.2d 65 (1985)."  Syllabus Point 3, *State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013).

4.    ""'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the

greater offense without first having committed the lesser offense.  An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, *State v. Louk*, [169] W. Va. [24], 285 S.E.2d 432 (1981) [*overruled on other grounds, State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994)].' Syllabus Point 1, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982)."  Syllabus Point 5, *State v. Wright*, 200 W. Va. 549, 490 S.E.2d 636 (1997).

5.      "Under Code, 61-11-8, which provides, in part, that:  'Every person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows:  ***' the failure or prevention of the accused to commit the offense attempted is as much an element of the attempt to commit the offense as the immediate specific intent to commit to the offense and an overt act in furtherance of such intent."  Syllabus Point. 4, *State v. Franklin*, 139 W. Va. 43, 79 S.E.2d 692 (1953).

6.      Attempted sexual assault in the first degree is not a lesser included offense of sexual assault in the first degree.

7.      "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment."  Syllabus Point. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

8. "Before a manifest necessity exists which would warrant the declaring of a mistrial and the discharging of the jury and ordering a new trial, the circumstances must be prejudicial, or appear to be prejudicial, to the accused or the state." Syllabus Point 3, *State ex rel. Brooks v. Worrell*, 156 W. Va. 8, 190 S.E.2d 474 (1972).

9. "The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syllabus Point 2, *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 454 S.E.2d 427 (1994).

10. "In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Syllabus Point 3, *State v. Casdorph*, 159 W. Va. 909, 230 S.E.2d 476 (1976) (*abrogated on other grounds by State v. Persinger*, 169 W. Va. 121, 286 S.E.2d 261 (1982).

11.     "In the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination."  Syllabus Point 1, *State v. Harlow*, 137 W. Va. 251, 71 S.E.2d 330 (1952).

12.     "It is improper for a prosecutor in this State to '[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness … or as to the guilt or innocence of the accused….' ABA Code DR7-106(C)(4) *in part*."  Syllabus Point 3, *State v. Critzer*, 167 W. Va. 655, 280 S.E.2d 288 (1981).

13.     "'Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal:  (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of the competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.'  Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995)."  Syllabus Point 1,  *State v. Hamrick*, 216 W. Va. 477, 607 S.E.2d 806 (2004).

**Armstead, Justice:**

Petitioner appeals his conviction of sexual assault in the first degree following a jury trial in the Circuit Court of Ohio County. On appeal, Petitioner asserts that the circuit court erroneously: (1) refused to instruct the jury on the offense of attempted sexual assault in the first degree; (2) denied Petitioner's motion for a mistrial regarding a photographic identification; (3) denied an *in camera* hearing when Petitioner learned that there was an out-of-court photographic identification; and (4) denied a mistrial when the prosecution's key witness testified at trial to the opposite of what had been provided in discovery and the assistant prosecutor vouched for the witness's credibility.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the circuit court did not err. We, therefore, affirm Petitioner's conviction.

## I. FACTUAL AND PROCEDURAL HISTORY

On or about February 3, 2017, A.M.[1] disclosed to her elementary school counselor that a man touched her vagina one time.[2] This disclosure was reported to West

---

[1] Consistent with our long-standing practice, we use initials to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] During A.M.'s fifth grade year at her elementary school, the counselor taught a curriculum called "The Child Safety Unit," which addressed different types of abuse and provided the children with information about how to talk to someone about unwanted touches.

1

Virginia Child Protective Services and the West Virginia State Police. Further, this disclosure was memorialized in an email drafted by the counselor, which reads:

> [A.M.] disclosed that in May or June of last summer (between 4 and 5 grade) a "private body part rule" had been broken with her. She shared that while at her mom's house, still living in North Park Apartments, her mom's friends "Dayo" had touched her vagina while he thought she was asleep on the couch. She explained that mom was in the shower and that she had fallen asleep on the couch with her baby brother, [A]. Dayo picked up and moved [A] to the other end of the couch and then sat back down with her and put his hand inside of her pants. He stopped when mom opened the door to come out of the bathroom, where she was showering. She pretended to be asleep while Dayo touched her and she thinks he did not know that she realized this was happening to her. She said that she told her mom the next day and that she said, Ok, I will talk to Dayo about it. [A.M.] thinks mom was lying [because] "I can always tell when she's lying" and thinks she never did anything about it [be]cause they never talked about it again. Until reporting to this counselor, she says that she has not told anyone else. I called the new caseworker and she asked me to help transport [A.M.] to Harmony House for forensic interview this same day. I also made a formal report to WV CPS centralized intake.

The counselor transported A.M. to Harmony House for a forensic interview. Although the interview was recorded, the video was the only portion that actually recorded. The audio of the interview failed to record.

A.M.'s case worker at the time of her disclosure witnessed the interview and prepared an email memorializing it. In the email, the case worker described A.M.'s account of the event in which she identified Dayo as the man who put his hand inside her clothes

2

in the "bikini bottom part between the legs." Further, according to the case worker's email, A.M. said that Dayo "moved his fingers around and it felt 'weird it's hard to explain.'" She noted that "[A.M.] denies penetration. She says that the incident stopped when he heard the bathroom door open."

On July 20, 2017, a criminal complaint was filed against Petitioner, and on the same day, a warrant was issued for his arrest. Petitioner waived extradition from Ohio and was transported to the Magistrate Court of Ohio County for his initial appearance. Petitioner's bail was set at $25,000 (full cash only) and due to his inability to post bail, he was committed to jail.[3] On January 8, 2018, Petitioner was indicted on one count of sexual assault in the first degree. He was arraigned on January 18, 2018, and at that time, the State served "State of West Virginia's Discovery Disclosure" upon Petitioner through his counsel. In Section VIII of the disclosure, which deals with "Photographs from Photographic Lineups or other Identification Proceeding," the State noted "Not applicable."

Petitioner's trial began on May 7, 2018, and concluded on May 9, 2018. During the trial, the State called five witnesses: the school counselor, A.M.'s case worker,

---

[3] Petitioner's bond was subsequently modified, by agreed order, to $10,000 corporate surety bond with GPS monitored house arrest. Petitioner posted bond on February 1, 2018, and he remained on home confinement until it was revoked following his conviction.

3

M.F. (A.M.'s mother), Sergeant Dean (investigating officer), and A.M. Relevant to this appeal, during the cross-examination of A.M.'s mother, M.F., she testified that Sergeant Dean had shown her a photograph of Petitioner and asked her to identify him. Petitioner's counsel moved for a mistrial and argued that because the State failed to disclose the identification pretrial, "there [was] no remedy for it other than a mistrial." The circuit court disagreed and denied Petitioner's motion for a mistrial.

After the State rested its case, the parties and the court engaged in a discussion regarding the charge and jury instructions.[4] The State included a proposed jury instruction for the lesser included offense of sexual abuse in the first degree. Petitioner objected to the instruction so it was withdrawn by the State. Thereafter, Petitioner requested an instruction for attempted sexual assault in the first degree, and the State objected to such an instruction.

After consideration of this issue, the circuit court declined to include an instruction for attempted sexual assault in the first degree for the following reasons: (1) Petitioner did not submit a proposed instruction for attempted first-degree sexual assault; and (2) the court did not believe that the evidence would support giving an attempted first-degree sexual assault instruction.

_____

[4] Both sides submitted a proposed jury charge, and the circuit court described them as "very similar, if not virtually identical."

During closing arguments, the assistant prosecutor made the following remarks concerning A.M.'s trial testimony:

> "[p]robably the most critical, most reliable most inherently non-tainted evidence in this case is A.M. A.M. came to court today as an 11-year old child that plays the violin and is in chorus and has so many pets that I can't even remember and now lives with her grandma, and she testified to you, specifically and in detail, about the sexual assault by Dayo, David Ray Thomas. A.M. has no motivation to lie."

Petitioner made a timely objection to this statement and argued that the assistant prosecutor was "vouching for the witness." For this reason, Petitioner again moved for a mistrial. Although the circuit court did not find that vouching had occurred, it instructed the assistant prosecutor not to vouch for the credibility of witnesses. Upon resuming her closing argument, the assistant prosecutor said "[y]ou are the trier of the facts and you can judge the credibility of the witness – the witnesses."

During the State's rebuttal closing argument, the assistant prosecuting attorney said: "[t]hat child was so deliberate and factual and just listened to the questions. She wasn't coached. She wasn't lying about issues and saying things." Petitioner made a timely objection and again moved for a mistrial arguing that the assistant prosecutor had vouched for A.M. The circuit court sustained Petitioner's objection and instructed the jury to "disregard counsel's last statement."

Following deliberations, Petitioner was convicted of sexual assault in the first degree and was sentenced to an indeterminate term of incarceration of not less than twenty-five nor more than one hundred years.

Petitioner now appeals his conviction.[5]

## II.  STANDARDS OF REVIEW

Initially, Petitioner asserts that the circuit court erred by refusing to instruct the jury on the offense of attempted sexual assault in the first degree.  "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion.  By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*."  Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

"'The decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court.'  Syllabus point

---

[5] Following his conviction, Petitioner requested new counsel, and his request was granted.  Petitioner appeared for his sentencing hearing on August 28, 2018, and his sentence was memorialized in an order entered on November 9, 2018.  On May 15, 2019, the circuit court entered an Amended Sentencing Order to correct an error in the State's recitation of the evidence introduced at trial, but the amended order did not change Petitioner's sentence, conditions of registration or supervised release.  On April 5, 2019, this Court granted prior counsel's Motion to Withdraw Petitioner's Appeal.  On or about February 8, 2022, Petitioner moved to be resentenced to renew his appeal period.  By order entered on March 22, 2022, Petitioner was resentenced and the instant appeal followed.

8, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989)." Syl. Pt. 1, *State v. Costello*, 245 W. Va. 19, 857 S.E.2d 51 (2021).

"The decision to grant or deny a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Lowery*, 222 W. Va. 284, 288, 664 S.E.2d 169, 173 (2008).

## III.  DISCUSSION

In his appeal before this Court, Petitioner argues that the circuit court erroneously:  (1) refused to instruct the jury on the offense of attempted sexual assault in the first degree; (2) denied Petitioner's motion for a mistrial regarding a photographic identification; (3) denied an *in camera* hearing when Petitioner learned that there was an out-of-court photographic identification; and (4) denied a mistrial when the prosecution's key witness testified at trial to the opposite of what had been provided in discovery and the assistant prosecutor vouched for the witness's credibility.

## A.    LESSER INCLUDED OFFENSE

In Petitioner's first assignment of error, he asserts that the circuit court erroneously denied his motion to instruct the jury on the lesser included offense of attempted sexual assault in the first degree.

7

Petitioner was indicted and convicted of sexual assault in the first degree.[6] During a discussion regarding jury instructions, the State provided the circuit court with a written instruction for the lesser included offense of sexual abuse in the first degree. Petitioner objected to the State's instruction for sexual abuse in the first degree so it was withdrawn by the State. The State informed the court that it was "comfortable with first-degree sexual assault … just guilty or not guilty."

Petitioner moved to have the jury instructed on the crime of attempted sexual assault in the first degree but did not provide the circuit court with a proposed written instruction for that offense.[7] Following a recess, the circuit court informed the parties that it would not include a jury instruction for attempted sexual assault in the first degree. In support of its ruling, the circuit court indicated that "[t]here hasn't been one submitted, but notwithstanding that, I don't believe the evidence would support giving an attempted sexual assault instruction. I think, based on the evidence, it's either the State has met its

---

[6] West Virginia Code § 61-8B-3(a)(2) provides: "A person is guilty of sexual assault in the first degree when: The person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is younger than twelve years old and is not married to that person."

[7] Immediately after this request was made, the discussion veered from the attempt instruction to the topic of a possible alibi defense when Petitioner interjected himself into the discussion and stated that he was out of state at the time the crime occurred. Petitioner's trial counsel indicated that Petitioner was "going to testify to that," and the State objected because the Petitioner had not provided notice of an alibi defense. The alibi issue was eventually resolved when the circuit court indicated that an alibi defense would be improper, and counsel for Petitioner agreed and indicated: "[o]ur defense is we didn't do it. That's not an alibi."

burden of proof as to the charged offense or it has not met its burden of proof as to the charged offense." Counsel for Petitioner offered the following proffer of what his instruction would have been:

> [i]t would've been – well, actually, it would've been – it would've been that the jury could return one – it could return three verdicts. It could return a verdict of guilty of first-degree sexual assault, guilty of attempted first-degree sexual assault, or not guilty. My attempt instruction would've come from West Virginia Code 61-11-8, and it says that every person who attempts to commit an offense, that failed to commit an offense or is prevented from committing it, shall, where it is not otherwise provided by law, be punished as followed [sic]. And I also would've said that there's two elements for the attempt. First, there has to be an intent to commit the crime, and then, second, there has to be a substantial step in furtherance of that crime with the intent to commit the crime. That would've been what I would've instructed with regards to my attempt instruction.

This Court has previously held:

> [t]he question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense.

Syl. Pt. 3, *State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013).

We begin our analysis by first determining whether the crime of attempted sexual assault in the first degree is actually a lesser included offense of sexual assault in the first degree. Petitioner argues that "[t]he test of determining whether a particular

9

offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without having first committed the lesser offense." *State v. Bell*, 211 W. Va. 308, 311, 565 S.E.2d 430, 433 (2002). Petitioner acknowledges that whether the crime of attempted sexual assault in the first degree is a lesser included offense of sexual assault in the first degree is an issue of first impression for this Court. In essence, Petitioner argues that a person cannot complete an act without first attempting to complete the act. [8] In support of this argument, Petitioner urges this Court to follow decisions from other jurisdictions which have concluded that attempted sexual assault in the first degree is a lesser included offense of sexual assault in the first degree. We decline to do so.

Petitioner's analysis of whether a particular offense is a lesser included offense does not provide the complete picture. "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. **An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.**' Syllabus Point 1, *State v. Louk*, [169] W. Va. [24], 285 S.E.2d 432 (1981)[*overruled on other grounds, State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994)].' Syllabus Point 1, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d

---

[8] In his brief before this Court, Petitioner lays out this argument as follows: "[n]eedless to say, attempted penetration is a lesser included offense of completed penetration because it is impossible for a person to complete an act (at least where intent is an element) if the person didn't attempt to complete it."

902 (1982)." Syl. Pt. 5, *State v. Wright*, 200 W. Va. 549, 490 S.E.2d 636 (1997) (emphasis added).

Unlike the jurisdictions Petitioner cites, this Court is bound to apply the elements in the attempt statute of *this* State and as interpreted by this Court in ascertaining whether the elements of attempted sexual assault include an element not required of completed sexual assault  The general attempt statute, West Virginia Code § 61-11-8, provides in relevant part that "[e]very person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows…."

In *State v. Starkey*, we noted the difficulties in contouring the elements of the general attempt statute, "result[ing] from the fact that an attempt to commit a crime covers a broad spectrum of different criminal offenses." 161 W. Va. 517, 522, 244 S.E.2d 219, 222 (1978), *overruled on other grounds by State v. Guthrie,* 194 W. Va. 657, 461 S.E.2d 163, (1995).[9] Nevertheless, under *Starkey* "[i]n order to constitute the crime of attempt, two requirements must be met:  (1) a specific intent to commit the underlying substantive

---

[9] The Court in *Starkey* further noted that the difficulty in attempted crimes can be attributed, in part, to the fact that "[t]he crime of attempt does not exist in the abstract, but rather exists only in relation to other offenses."  And "[e]ach criminal offense contains separate elements.  Consequently, the type of facts necessary to prove an attempt to commit murder will not be the same as those necessary to prove an attempt to commit embezzlement or arson." *Starkey*, 161 W. Va. at 522, 244 S.E.2d 219, 222-223.

11

crime; and (2) an overt act toward the commission of the crime, which falls short of completing the underlying crime. *Id.* at Syl. Pt. 2.

Important for our purposes, this Court has held, since at least 1953, that "[u]nder Code, 61-11-8, … the failure or prevention of the accused to commit the offense attempted is as much an element of the attempt to commit the offense as the immediate specific intent to commit the offense and an overt act in furtherance of such intent." Syl. Pt. 4, *State v. Franklin*, 139 W. Va. 43, 79 S.E.2d 692 (1953). Having cited *Franklin*, the *Starkey* Court was aware of and did not disturb that point of law. *Starkey*, 161 W. Va. at 521, 244 S.E.2d at 222. While Petitioner argues that logic demands the conclusion that one must always attempt a crime before completing it, that logic is not universally applicable, particularly given that attempt requires the specific intent to commit a crime and not all crimes are intentionally committed. We find that applying this Court's precedent relative to the elements of attempted sexual assault compels the conclusion that it requires proof of an element not required of sexual assault, namely, the failure or prevention of the accused to actually commit a sexual assault.[10] Therefore, the crime of

_____

[10] Rule 31(c) of the West Virginia Rules of Civil Procedure provides: "(c) *Conviction of lesser offense.*—The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." This rule refers to attempt and lesser included offenses with the disjunctive "or" – that is, that attempt is distinct from a lesser *included* offense of the greater charged, albeit all under the umbrella of "lesser offenses." Lesser *included* offenses offer a criminal defendant the benefit of mitigation for not having committed some extra element of the greater offense that is tantamount to greater culpability. The inchoate crime of attempt, by contrast, is a "lesser offense" (continued . . .)

attempted sexual assault in the first degree is not a lesser included offense of sexual assault in the first degree and Petitioner was not entitled to the instruction because the first prong of *Neider* is not met .[11]

While we need not continue the *Neider* analysis of whether the attempt instruction was supportable by the evidence, we find it incumbent to mention that Petitioner relied on a misidentification defense, not mitigation for a crime that he failed to complete because he was interrupted during its commission.[12] The evidence presented at trial was

___

because it offers the defendant mitigation insofar as the crime intended was not *accomplished* either by choice or by happenstance. Petitioner does not cite or otherwise argue that he is entitled to relief based on Rule 31, couching his argument solely in terms of attempt as a lesser *included* offense, and we address his argument accordingly.

[11] In support of his argument regarding the circuit court's refusal to instruct the jury on the crime of attempted sexual assault in the first degree, Petitioner also asserts that the denial of his proffered instruction resulted in a dramatic difference in his sentence. Petitioner's reliance upon the differences in the severity of the sentences between the two crimes is without merit. Although Petitioner correctly notes that the crime of sexual assault in the first degree, for which he was convicted, carries an indeterminate sentence of 25 to 100 years, and the crime of attempted sexual assault in the first degree carries a much reduced sentence of 1 to 3 years, he fails to acknowledge that this issue is not a factor that this Court can consider. "[S]entence length is not a factor in … [the] test for determining whether a defendant is entitled to a lesser-included offense instruction." *State v. Wegman*, No. 17-1041, 2019 WL 2406521 at *3 (W. Va. Supreme Court, June 7, 2019)(memorandum decision). Interestingly, Petitioner also asserts that his sentence would have been greatly reduced if he had been convicted of what he terms "sexual contact," which is sexual abuse in the first degree. However, as we have previously noted, Petitioner *objected* to the giving of this specific instruction so the State withdrew its proposed instruction for sexual abuse in the first degree.

[12] Petitioner acknowledges that identification was an issue in this case, and in fact during closing arguments, Petitioner's trial counsel said "[s]omething may have happened (continued . . .)

13

that of a completed sexual assault (penetration) or a completed sexual abuse in the first degree (sexual contact without penetration). The only evidence that Petitioner was prevented from committing the completed crime of sexual assault was the victim's interview at Harmony House when she told the interviewer that he stopped touching her when her mother got out of the shower and opened the bathroom door – by which time he had already *completed* the offense of sexual abuse in the first degree. However, when offered an instruction on the lesser included offense of sexual abuse in the first degree,[13] Petitioner objected, contending that it was an "all or nothing" case. In other words, Petitioner's view of the evidence was that the State had to prove penetration (the *completed* crime of sexual assault in the first degree) or be content with an acquittal for no crime having occurred at all. Under those circumstances, we have difficulty concluding that the circuit court abused its discretion in finding that the evidence did not support an attempt instruction. Moreover, the circuit court was only obligated to give the instruction at issue if it was a lesser included offense. Because we have concluded that attempted sexual assault in the first degree is not a lesser included offense of sexual assault in the first degree, Petitioner was not entitled to the requested instruction.

---

to this child. I don't know. Let me tell you, that man [Petitioner] didn't do it." The State argues that this defense may preclude a criminal defendant from requesting a lesser included offense instruction.

[13] *See State v. Dellinger*, 178 W. Va. 265, 358 S.E.2d 826 (1987) (holding that, under certain facts, sexual abuse in the first degree is a lesser included offense of sexual assault in the first degree.)

Although the crime of attempted sexual assault in the first degree is not a lesser included offense of sexual assault in the first degree, this Court has previously concluded that the crime of sexual abuse in the first degree is a lesser included offense of sexual assault in the first degree under certain facts. *See State v. Dellinger*, 178 W. Va. 265, 358 S.E.2d 826 (1987) (per curiam). While Petitioner argued that it was error for the circuit court to fail to instruct the jury on attempted sexual assault in the first degree, counsel conceded that if Petitioner objected to the lesser included offense instruction of sexual abuse in the first degree (which he did below), he cannot complain and would have waived that issue. Accordingly, Petitioner's counsel essentially conceded the issue relating to the lesser included offense instruction during oral argument.

While the circuit court focused on Petitioner's failure to submit a written instruction and its belief that the evidence did not support giving such an instruction, we find that the more compelling fact is that, pursuant to the standard set forth in *State v. Neider* as well as this Court's prior holding in *State v. Franklin*, attempted sexual assault in the first degree is not a lesser included offense of sexual assault in the first degree.[14] Accordingly, the circuit court did not err in declining to give the requested instruction.

B.      PHOTOGRAPHIC IDENTIFICATION

---

[14] "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

15

Petitioner's second and third assignments of error relate to a pretrial photographic identification, and for ease of reference, we will address both assignments together. In his second assignment of error, Petitioner alleges that the circuit court erred by denying his motion for a mistrial that was made after he learned of a pretrial photographic identification during his trial. In his third assignment of error, Petitioner argues that the circuit court compounded this error by denying his motion for an *in camera* hearing on the suggestibility of the pretrial photographic identification.

The record reflects that Petitioner first learned of a pretrial photographic identification during the cross examination of A.M.'s mother, M.F. M.F. testified that Sergeant Dean showed her a picture of Petitioner and she identified the person in the photograph as Dayo. M.F. did not know whether the photograph had been shown to A.M. After M.F. completed her trial testimony and after she was excused, Petitioner moved for a mistrial. Following a recess, the circuit court heard arguments regarding the motion for a mistrial. The circuit court denied Petitioner's motion, concluding that the photograph was used to confirm that the person in the photograph was Dayo, not to identify Dayo.

Petitioner concedes that there are various remedies available to a circuit court when there has been a discovery violation.

> Rule 16(d)(2) [of the West Virginia Rules of Criminal Procedure] provides that where there has been noncompliance with legitimate discovery requests, a circuit court, in addition to ordering immediate disclosure, granting a continuance, and excluding evidence, "may enter such other order as it deems just under the circumstances." This broad language justifies

16

the adding of several other remedies or sanctions to the list such as (a) advising the jury to assume the existence of facts that might have been established by the missing information, (b) holding the violator in contempt of court, (c) granting a mistrial, and (d) dismissing the charges.

*State ex rel. Rusen v. Hill*, 193 W. Va. 133, 140, 454 S.E.2d 427, 434 (1994). Importantly, "[w]hich remedy is preferable is best left to the discretion of the circuit court." *Id.*

The remedy sought by Petitioner was a mistrial. Petitioner did not seek a continuance or any of the other possible remedies. The circuit court concluded that a mistrial was not appropriate. This Court has previously held:

[t]he decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. A trial court is empowered to exercise this discretion only when there is a "manifest necessity" for discharging the jury before it has rendered its verdict. This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy.

*State v. Williams*, 172 W. Va. 295, 304, 305 S.E.2d 251, 260 (1983) (citations omitted). "Before a manifest necessity exists which would warrant the declaring of a mistrial and the discharging of the jury and ordering a new trial, the circumstances must be prejudicial, or appear to be prejudicial, to the accused or the state." Syl. Pt. 3, *State ex rel. Brooks v. Worrell*, 156 W. Va. 8, 190 S.E.2d 474 (1972).

The circuit court's denial of Petitioner's motion for a mistrial is reviewed under an abuse of discretion standard. *State v. Lowery*, 222 W. Va. 284, 664 S.E.2d 169,

17

(2008). We must now determine if "manifest necessity" existed requiring the circuit court to declare a mistrial. In making this determination, we are guided by our prior decisions regarding discovery violations and out-of-court identifications.

"The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syl. Pt. 2, *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 454 S.E.2d 427 (1994). While Petitioner was surprised by M.F.'s testimony regarding an out-of-court photographic identification, we are not persuaded that this violation meets the second prong of *Rusen*.

Although Petitioner asserts that the circuit court's ruling was based, in part, "on a difficult-to-comprehend assertion that the suggestive photo was not presented to A.M.'s mother for identification, but only for a 'a confirmation of it,'" we disagree with Petitioner's characterization. Even if we were to find that the out-of-court identification was suggestive, the question we must then decide is whether "under the totality of the circumstances" the identification was reliable.

> In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the

18

witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Syl. Pt. 3, *State v. Casdorph*, 159 W. Va. 909, 230 S.E.2d 476 (1976) (*abrogated on other grounds by State v. Persinger*, 169 W. Va. 121, 286 S.E.2d 261 (1982).

Significantly, the photographs were not used to identify an unknown assailant. Instead, they were used to confirm that the individual in the photograph was Dayo, the person A.M. identified as the perpetrator from the moment she disclosed the assault. Of particular significance is the fact that A.M. did not see the photographs and the record does not reveal that A.M. even heard discussion relating to the photographs. The jury heard testimony that M.F. knew Petitioner and that he had been to her house "[a] couple of times. Maybe four." The jury also heard that Petitioner had contact with A.M. and her brother and that Petitioner gave M.F. presents for the children. Accordingly, the victim, A.M., did not identify the Petitioner based on the photographs and the evidence clearly established that A.M.'s mother, M.F., knew the Petitioner independent of the photographs.[15]

---

[15] Petitioner also asserts that the circuit court compounded the error regarding the photographic identification by denying his motion for an *in camera* hearing on whether an in-court identification would be tainted by an unduly suggestive out of court identification. Petitioner's arguments in support of this assignment of error are difficult to follow. Petitioner argues that he "moved for both an *in camera* hearing on the admissibility of the out-of-court identification and a mistrial based on the late disclosure." The State argues that Petitioner did not move for an *in camera* hearing and, therefore, waived this assignment of error. A review of the trial transcript reveals that Petitioner moved for a mistrial, not an *in camera* hearing. Further, in his reply before this Court, Petitioner (continued . . .)

For these reasons set forth herein and under the facts of this case, the circuit court did not abuse its discretion when it denied Petitioner's motion for a mistrial with respect to the photographic identification. Accordingly, we affirm the circuit court's decision in this regard.

## C. AMBUSH & VOUCHING

In his final assignment of error, Petitioner combines two complaints: (1) the State ambushed him when A.M. allegedly testified contrary to the discovery that was provided; and (2) the State improperly vouched for A.M.'s credibility during its closing arguments.[16] We find no merit to Petitioner's arguments in this regard.

---

acknowledges that "an *in camera* hearing would [have] be[en] meaningless … because the in-court identification had already occurred."

The *in camera* hearing Petitioner refers to is generally known as a "*Casdorph* hearing." *See State v. Casdorph*, 159 W. Va. 909, 230 S.E.2d 476 (1976) (*abrogated on other grounds by State v. Persinger*, 169 W. Va. 121, 286 S.E.2d 261 (1982).

As we noted, *supra*, Petitioner only moved for a mistrial. He did not move for a continuance. Further, in support of his motion for a mistrial, his counsel stated "there is no remedy for [the failure to disclose] other than a mistrial."

[16] Petitioner's specific assignment of error in this regard is that the circuit court erred in denying his motion for a mistrial regarding these alleged errors. Although Petitioner made two motions for a mistrial during the State's closing arguments, it does not appear that he made a motion for a mistrial during the alleged ambush that he claims occurred during A.M.'s trial testimony. Following A.M.'s testimony, the State rested. After the jury was excused from the courtroom, Petitioner made a motion for judgment of acquittal pursuant to Rule 29 of the West Virginia Rules of Criminal Procedure. Since Petitioner made a motion for a mistrial during the State's closing argument and because he combines his claims of ambushing and vouching, we will analyze this assignment of error under the lens of a motion for a mistrial.

20

Initially, Petitioner asserts that he was ambushed by A.M.'s trial testimony because it was only then that he "first learn[ed]" that A.M. was alleging that penetration occurred. Essentially, Petitioner's argument is that the State committed discovery violations that hampered his trial preparation.

As we noted, *supra,* "[t]he traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syl. Pt. 2, *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 454 S.E.2d 427 (1994). Despite Petitioner's argument of surprise, he had been provided, prior to trial, a copy of the grand jury transcript in which Sergeant Dean testified that he had determined, through his investigation, that Petitioner "penetrated, however slight, the female sexual organ of A.M." In fact, the alleged discrepancy between A.M.'s interview with the interviewer at Harmony House and Sergeant Dean's grand jury testimony formed, in part, the basis for Petitioner's Motion to Dismiss the Indictment. Petitioner's motion to dismiss was denied as "untimely and in violation of the Court's Scheduling order." In addition, the circuit court found that Petitioner's motion "appears to summarily highlight *conflicts in the evidence* rather than providing factual support for allegations of fraud and/or prosecutorial misconduct by the prosecuting attorney." (Emphasis added). Clearly, Petitioner was aware of A.M.'s interview and of Sergeant Dean's grand jury testimony.

For these reasons, we are not persuaded by Petitioner's claim that he was ambushed or surprised by A.M.'s trial testimony. Further, we find that the preparation and presentation of Petitioner's case was not hampered by this alleged conflict in the evidence. Significantly, Petitioner did not move for a continuance to allow him to address the alleged "ambush."

In addition to his claim of being ambushed, Petitioner also maintains that the assistant prosecutor "vouched for [A.M.'s] credibility, despite personally knowing that [A.M.] had not been truthful." We begin our analysis with Petitioner's assertion that the State "personally" knew that A.M. had not been truthful.[17] Petitioner was provided discovery regarding A.M.'s forensic interview with interviewer at Harmony House in which it was noted that A.M. denied penetration. During A.M.'s trial testimony, she testified that Petitioner put his hand "a little bit inside my private part." She then clarified that she meant vagina when she used the term "private part." Counsel for Petitioner thoroughly cross-examined A.M. regarding the issue of penetration, and during redirect, A.M. was asked if she knew what the word "penetration" meant. Her answer was "[n]ot really."

At the time of her testimony, A.M. was eleven years old. According to her trial testimony, the crime occurred during the summer between fourth and fifth grade when

---

[17] This claim appears to be directed toward the assistant prosecutor who met with A.M. prior to her trial testimony.

22

she "nine, turning ten." Although Petitioner describes A.M.'s trial testimony as a "last-minute assertion of a lack of understanding of the meaning of the word 'penetration,'" and argues that such assertion "seems improbable," he points to no evidence that A.M. had previously indicated that she knew what penetration meant. Further, the jury heard A.M.'s testimony as well as Petitioner's cross-examination and made a credibility determination, which we will not disturb.

The assistant prosecutor made two statements during closing arguments that resulted in Petitioner motions for a mistrial. First, the assistant prosecutor said:

> Probably the most critical, most reliable, most inherently non-tainted evidence in this case is A.M. A.M. came to court today as an 11-year-old child that plays the violin and is in chorus and has so many pets that I can't even remember and now lives with her grandma, and she testified to you, specifically and in detail, about the sexual assault by Dayo, David Ray Thomas. A.M. has no motivation to lie.

Petitioner objected and during a sidebar discussion with the circuit court, counsel for Petitioner argued that the assistant prosecutor was vouching for the credibility of A.M. For this reason, Petitioner moved for a mistrial. The circuit court denied Petitioner's motion but instructed the State not to vouch for credibility. Immediately thereafter, the State made the following statement to the jury: "[y]ou are the trier of facts and you can judge the credibility of the witness – the witnesses."

23

During the State's rebuttal closing argument, the assistant prosecutor made the following statement: "[t]hat child was so deliberate and factual and just listened to the questions. She wasn't coached. She wasn't lying about issues and saying things." Counsel for Petitioner objected and again moved for a mistrial. The circuit court denied Petitioner's motion for a mistrial but sustained the objection and instructed the jury to disregard the State's last statement.

"It is improper for a prosecutor in this State to '[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness … or as to the guilt or innocence of the accused….' ABA Code DR7-106(C)(4) *in part*." Syl. Pt. 3, *State v. Critzer*, 167 W. Va. 655, 280 S.E.2d 288 (1981). This Court has held that the following

> "'[f]our factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of the competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.' Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995)."

Syl. Pt. 1, *State v. Hamrick*, 216 W. Va. 477, 607 S.E.2d 806 (2004). In addition to articulating the factors to be examined when analyzing an alleged prejudicial prosecutorial remark, *Sugg* also "clarified that not every improper prosecutorial remark will result in reversal of a conviction: '[a] judgment of conviction will not be set aside because of

24

improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice.'" *State v. Mills*, 219 W. Va. 28, 631 S.E.2d 586 (2005) (quoting Syl. Pt. 5, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995)).

The first comment was made during the State's closing argument, and it was immediately followed by the following statement: "[y]ou are the trier of facts and you can judge the credibility of the witness – the witnesses." The second comment occurred during rebuttal closing argument, and was, in part, a response to comments made by Petitioner's counsel that A.M. had been coached into changing her testimony. Petitioner asserts that these comments required the circuit court to declare a mistrial. In support of this argument, Petitioner relies, in part, on two prior decisions of this Court, but his reliance is misplaced as neither of these cases bolster his argument. In *State v. England*, 180 W. Va. 342, 376 S.E.2d 58 (1988), this Court affirmed a conviction despite the prosecutor saying that two witnesses "were here to tell the truth," and that neither had "something to gain" by testifying against the defendant. In fact, the prosecutor in *England* concluded: "They [the State witnesses] took an oath to tell you the truth , and I submit to you that that's what they did." *Id.* at 351, 376 S.E.2d 548, 557 (1988). In *State v. Critzer*, 167 W. Va. 655, 280 S.E.2d 288 (1981), this Court reversed a defendant's criminal conviction because the prosecutor "injected his personal opinion as to the guilt of the defendant, asserted his belief in the honesty, sincerity, truthfulness, and good motives of his witnesses," and also "argued facts not in evidence." *Id.* at 660-661, 280 S.E. 288, 292. In addition, the prosecutor "compared the defendant to a vulture and appealed to local prejudice by indicating that the

25

defendant came to West Virginia to victimize dumb hillbillies." *Id.* at 661, 280 S.E.2d 288, 292. Further, the prosecutor "pointed to and directly addressed the defendant." *Id.* Significantly, and in sharp contrast to the facts of the instant case, this Court noted in *Critzer* that "no instructions were given to the jury telling them the prosecutor's comments were improper and that they should disregard them." *Id.* at 661, 280 S.E.2d 288, 292 (1981).

The statements at issue in the instant case were limited, not extensive. With respect to these statements, the assistant prosecutor did not vouch for the truthfulness of any specific statement that A.M. made. The statements at issue did not mislead the jury, and Petitioner has not alleged that they were deliberately placed before the jury to divert attention to extraneous matters. Petitioner's objection to the second statement at issue was sustained, and the jury was instructed to disregard the statement. Importantly, the strength of the evidence that established Petitioner's guilt weighs heavily against a finding that the circuit court erred in declining to declare a mistrial.

We believe that the circuit court "acted within appropriate bounds of discretion"[18] in deciding that the assistant prosecutor's statements, followed by (1) a reminder by the assistant prosecutor that the jury was the trier of fact and could judge the credibility of the witnesses as to the first statement; and (2) a sustained objection and an

---

[18] *State v. Lowery*, 222 W. Va. at 288, 664 S.E.2d at 173.

26

instruction by the circuit court to disregard the assistant prosecutor's last statement, did not create a manifest necessity requiring a mistrial. For these reasons, we find that the circuit court did not abuse its discretion by denying Petitioner's motions for a mistrial due to vouching.

## IV. CONCLUSION

Therefore, for the reasons set forth herein, the decision of the Circuit Court of Ohio County is affirmed.

Affirmed.